In re SIMMONS et al., Board of Water Supply of City of New York.

(Supreme Court, Appellate Division, Second Department. June 24, 1910.)

EMINENT DOMAIN (§ 236*)—ASSESSMENT OF COMPENSATION—REPORT OF COMMISSIONERS—NEW HEARING.

In proceedings by a city to condemn land for an extension of its water system, about half of a tract consisting of a pond and contiguous land used by the owner for ice harvesting purposes, and containing over seven acres, was taken. The owner claimed $35,600 damages, based partly on the claim that the construction of the city's aqueduct would cut off the water supply of the pond, and that access to the property would be cut off because of the heavy grades of the rights of way granted by the city. No evidence was taken as to the cost of a fill which would reduce the grades, and, if the award covered that item, there was nothing to show whether it was adequate. The city attempted to show that the damages would not exceed $2,100, and the commissioners awarded $4,088. After the award, the city began constructing its aqueduct, and the owner presented affidavits on a motion to set aside the commissioners' report, showing that the actual work partially cut off the supply of water from the pond, and further claimed that the difference between the amount of the damages claimed and the amount awarded showed that the commissioners did not take into consideration the value of the land for ice harvesting purposes. Held, that the matter should be referred back to the commissioners for a new hearing, and that there was no occasion for appointing new commissioners.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 602; Dec. Dig. § 236.*]

Appeal from Special Term, Westchester County.

Proceedings by J. Edward Simmons and others, constituting the Board of Water Supply of the City of New York, to acquire land for an aqueduct. From an order of the Special Term setting aside the report of Commissioners of Appraisal and appointing new commissioners, the petitioners appeal. Modified by striking out appointment of new commissioners, and affirmed.

Argued before WOODWARD, JENKS, BURR, THOMAS, and CARR, JJ.

H. T. Dykman, for appellants.
Leverett F. Crumb, for respondent.

CARR, J. This is a proceeding begun by the city of New York to acquire land for the extension of its water supply system, pursuant to the provisions of chapter 724 of the Laws of 1905, as amended. The property in question on this appeal is situate in the town of Cortlandt, near the village of Peekskill, in Westchester county. Commissioners of Appraisal were duly appointed and the proofs of the petitioners and the owners were taken as to damages. On these proofs, a report was made awarding damages to the owners in the sum of $4,088. A motion was made at a Special Term of this court in Westchester county to confirm the report. Pending the decision of this motion, the owners of the land moved to set aside the report on the ground of newly discovered evidence. The learned court at Special Term decided both motions by granting an order setting aside the report of the commissioners and appointing new commissioners of appraisal to take proofs and report as to the damages to be awarded to the owners of the land. From that order this appeal was taken.

The Court at Special Term filed an opinion from which it appears that it had concluded that the present commissioners had arrived at their report upon an erroneous principle, in that they had failed to consider the proofs of the owners as to the damages caused to that part of their property which was not taken, and which, together with the part taken, was used by them in the harvesting and storing of ice for the purposes of sale in the village of Peekskill. The whole tract owned by the claimants consisted of about 7½ acres, and comprised a small pond, with lands forming its shore or border, and some swamp land adjoining, which was connected with the pond by a small stream or ditch. This land on one of its sides fronted on a public highway known as Locust avenue. The portion of the tract taken by the city of New York comprised a part of the swamp land and some of the shore of the pond. In taking this land the city cut off access from the remainder except over two specified rights of way shown in the maps filed in pursuance of the statute. In their original claim of damages, the owners asked an award of damages in the sum of $24,800. This amount they increased by an amended claim to $35,600, in support of which they gave proofs. The city gave evidence tending to show that the damages were about $2,000 or $2,100. From this great difference between the amount claimed and the amount awarded the owners argue that the commissioners arrived at their estimate by failing to take into consideration the value of the land for the purposes of harvesting ice, and in which purpose its sole practical value consisted. This argument seems to have impressed the learned court at Special Term, and contributed very materially to the decision now under review. The whole tract of the owners comprised originally 7.318 acres, of which 4.998 acres were land and 2.32 acres in the pond. Of this entire tract, the city took 3.665 acres, leaving the owners 3.653 acres, of which 2.269 acres were in the pond and but 1.384 acres were land. The result of this taking was, according to the owners' contention, to destroy entirely the suitability of the remainder of their property for ice harvesting purposes, and it was upon the basis of this contention that its estimate of its damages was framed. The damage to the land and pond not taken was calculated by the owners as follows:

It was estimated that 2,000 tons of ice could be harvested each year, and, after deducting loss by melting, there would be 1,200 tons for the purposes of sale at $8 a ton. After deducting taxes, depreciation, labor, and various incidental expenses, it was further estimated that there would be a profit of about $2,270 a season, which profit was capitalized on a 7 per cent. basis as the value of the entire tract for ice harvesting purposes. All the evidence given by the owners as to their damages was based evidently upon a similar calculation, though the items varied slightly. Whether this method of computing the damage is permissible is very questionable. Matter of Gilroy, 26 App. Div. 314, 49 N. Y. Supp. 798. It was claimed that this damage would arise from the city's taking through three independent but concurrent causes: First. It was claimed that the construction of the city's aqueduct through the swamp land would cut off the water supply of the pond. Second. It was claimed that to harvest ice successfully it was necessary to have low land adjoining the pond onto which the snow could be scraped off from the surface of the pond when frozen, and that the city had taken practically all that was formerly available. Third. It was urged that the present access to the property was cut off, and the two rights of way granted by the city were so steep in grade as to be practically unusable by teams drawing heavily laden ice wagons. Omitting for the moment a consideration of the grades of the rights of way, there was conflicting evidence before the commissioners on these contentions, and there is nothing in the bare record to indicate that in their estimate of damages the commissioners excluded the claims of the owners from their estimate on any other theory than that they were not sustained by the weight of evidence.

As to the grade of the rights of way as shown on the city's map, another question arises. These grades were concededly so steep as to constitute a serious element of damage to the owner, and the commissioners so thought, as appears by the record. It is claimed by the owners that through a misunderstanding the commissioners omitted this item from their total estimate of damages. It is urged by the appellant that the commissioners made an allowance for it by awarding some $2,000 more damages than those estimated by the city's expert witnesses. It appears from the owners' proof that the rights of way granted by the city could be made of the former grade by the use of about 2,000 cubic yards of earth fill on the owner's land, and of an easier grade by the use of 2,500 cubic yards. It is urged by the appellant that the commissioners in making the award at a sum in excess of the estimate of the city's witnesses made provision for the cost of the earth fill. No evidence was given as to the cost of the fill, and, assuming that the award of the commissioners was intended to cover this item, there is nothing before the court to show whether the provision, if made, was adequate or inadequate. This objection, however, is not grave enough to require the setting aside of the report and the appointment of new commissioners, as the question can be met sufficiently by remitting the matter to the present commissioners for further proof and consideration. A more serious question arises on the ground of newly discovered evidence. Since the commissioners made and filed their report, the city has begun its work of construc-

·tion through the swamp land. The owners presented affidavits tending to show that this actual work did to some extent cut off the supply of the pond. These affidavits were met by counter affidavits denying the results claimed by the owners. Considering the importance of this ·point, it would be but fair to permit the taking of further testimony as to the actual conditions attending the work of construction through ·the swamp, as they affect the supply of the pond. Sufficient time has elapsed to enable testimony to be given on this point with a greater ·degree of accuracy than was attainable through the opinion evidence .given at the original hearing. There is. nothing in the record before ·us to indicate the necessity of the appointment of new commissioners for this purpose, with the consequent loss of time and expenditure already had.

The order appealed from should be so modified as to refer the matter back to the same commissioners for a new hearing, and, as so ·modified, affirmed, without costs. All concur.